330 So.2d 177 (1976)
Betty MAXWELL et al., Appellants,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, Appellee.
No. 75-1285.
District Court of Appeal of Florida, Fourth District.
March 26, 1976.
Rehearing Denied May 5, 1976.
Richard H. Frank and Ronald G. Meyer of Law Offices of Frank & Meyer, Tampa, for appellants.
*178 Joseph A. Caldwell of Muller & Mintz, Miami, for appellee.
MAGER, Judge.
This is an appeal from an order dismissing plaintiffs' complaint, the trial court finding that it lacked jurisdiction over the subject matter. In particular, the trial court found that the activities alleged in the complaint were "labor matters" preempted by Chapter 447, Florida Statutes.
The complaint was filed by several persons in their individual and representative capacity seeking declaratory relief and money damages.[1] Counts I through IV of the complaint alleged in essence that prior to the 1974-1975 school year the School Board of Broward County, defendant, established and maintained a program known as the Basic Incentive Award; and that in reliance upon such program plaintiffs undertook to complete the necessary steps to participate therein and were qualified to receive the benefits thereunder but that such program was unilaterally rescinded and canceled by the defendant.[2] Plaintiffs sought damages to compensate them for the alleged losses incurred as a result of such cancellation.
The plaintiffs contend that the issues raised by the complaint are judicial controversies within the jurisdiction of the trial court and not "labor matters" within the framework of Part II, Chapter 447, Florida Statutes.
In 1974 the legislature enacted Chapter 74-100 (creating Part II, Chap. 447, F.S.) which among other things established a Public Employees Relations Commission (Section 447.205, F.S.; see also sections 447.201-447.607, F.S.) The subject legislation was a culmination of efforts to establish standards and guidelines governing collective bargaining by public employees in order to implement the rights guaranteed to public employees under sec. 6, Art. I, Fla. Constitution. See Dade County Class. Teach. Ass'n, Inc. v. Legislature, 269 So.2d 684 (Fla. 1972). The purposes and objectives of the legislative enactment are recited in section 447.201, F.S. as follows:
"447.201 Statement of policy.  It is declared that the public policy of the state, and the purpose of this part, is to provide statutory implementation of s. 6, Art. I of the State Constitution, to promote harmonious and cooperative relationships between government and its employees, both collectively and individually, and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. It is the intent of the legislature that nothing herein shall be construed either to encourage or discourage organization of public employees. These policies are best effectuated by:
(1) Granting to public employees the right of organization and representation;
(2) Requiring the state, local governments, and other political subdivisions to negotiate with bargaining agents duly certified to represent public employees;
(3) Creating a Public Employees Relations Commission to assist in resolving disputes between public employees and public employers; and
(4) Recognizing the constitutional prohibition against strikes by public employees and providing remedies for violations of such prohibition."
*179 One of the primary duties and responsibilities of the Public Employees Relations Commission (PERC) is to investigate and resolve charges of unfair labor practices, as defined under sec. 447.501, F.S. (see Appendix A).
From an analysis of its purpose and objectives and from a review of its provisions it appears that the legislature intended Part II, Chapter 447 to provide an exclusive method for resolving labor disputes between public employers and public employees, with the Public Employees Relations Commission having preemptive jurisdiction over such matters. In this respect, there is a marked similarity between the functioning of PERC and the National Labor Relations Board; to some extent the provisions of Part II, Chapter 447, have been patterned after the provisions of the federal law creating the NLRB (see, for example, the similarity between sec. 447.501 and 29 U.S.C.A. § 158 defining unfair labor practices). Therefore, reference to case law construing the federal act would be instructive in resolving the primary issue raised in this appeal, particularly whether jurisdiction over labor activities (and the circumstances under which such activities) would be preempted in favor of PERC.
In commenting on the preemption doctrine the Supreme Court of the United States observed:
"[P]rinciples of pre-emption, in whatever field of law they operate, are designed with a common end in view: to avoid conflicting regulation of conduct by various official bodies which might have some authority over the subject matter." Amalgamated Association, etc. v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 (1971).
The application of the principle of preemption was illustrated in Sheetmetal Workers' Int. Ass'n v. Florida H. & P., Inc., 230 So.2d 154, 155 (Fla. 1970), where our Florida Supreme Court stated that,
"It is settled law that jurisdiction over labor activities is pre-empted in favor of the National Labor Relations Board, if the activities arguably are covered by the National Labor Relations Act. In such cases state courts may not exercise jurisdiction because the jurisdiction of the Board is paramount and exclusive. Scherer & Sons, Inc. v. International Ladies' Garment Workers Union, Local 415, 142 So.2d 290 (Fla. 1962); Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775." (Emphasis ours.)
We, therefore, conclude that principles of preemption are applicable to the functioning of PERC; jurisdiction over labor activities is preempted in favor of PERC if the activities are "arguably" covered by the provisions of Part II, Chapter 447, supra. It is important to point out however that in Sheetmetal Workers' Int. Ass'n, supra, the Supreme Court held that Florida courts could only determine whether the complained of activities were "arguably" covered by the federal act and that they could not go further to initially determine whether a labor dispute existed. In determining whether complained of activities are arguably covered by the federal act, the United States Supreme Court stated in Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 488, 99 L.Ed. 546,
"We realize that it is not easy for a state court to decide, merely on the basis of a complaint and answer, whether the subject matter is the concern exclusively of the federal Board and withdrawn from the State... . But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction... ."
*180 In the instant situation there can be no doubt that PERC has exclusive jurisdiction over statutorily enumerated unfair labor practices. See sec. 447.501, F.S. The consideration for this court is whether the trial court could reasonably have found, on the record before it, that the activity complained of as set forth in Counts I through IV "arguably" constituted an unfair labor practice as defined by section 447.501, F.S. or the type of labor matter or dispute within the contemplation of Part II, Chapter 447.
Measured by the purposes and object of Part II, Chapter 447, and in particular by the statutory enumeration of "unfair labor practices", Counts I through IV of plaintiffs' complaint do not in our opinion reflect (labor) activities which are "arguably" embraced within the provisions of Part II, Chapter 447 and within the preempting jurisdiction of PERC.[3] The cancellation of the incentive awards program for which plaintiffs alleged they have suffered damages is far more removed from an "arguably" covered (labor) activity than a breach of a collective bargaining agreement which federal case law has uniformly held not to constitute an unfair labor practice. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); 6 ALR Fed. 589, Breach of Collective Bargaining Agreement as Unfair Labor Practice Under National Labor Relations Act, as amended (29 U.S.C. § 158). Not every activity or dispute between public employees and their public employer gives rise to the preemption jurisdiction of PERC; only those activities which from an examination of Part II, Chapter 447 are shown to be "arguably" covered by that act.
In the instant case the jurisdiction of the circuit court was not preempted by PERC insofar as Counts I through IV of the instant complaint were concerned. Therefore, the trial court erred in dismissing Counts I through IV of the complaint on the basis of lack of jurisdiction. The other points raised by the plaintiffs in this appeal are rendered moot in light of the foregoing determination. Suffice it to say by way of dicta, that had all of the activities (alleged in the complaint) been "arguably covered" by the provisions of Part II, Chapter 447, the fact that such activities were based upon events predating the enactment of Part II would not preclude application of the provisions of the act to such activities. Chapter 74-100 (creating Part II, Chap. 447), is remedial in nature. It operates in furtherance of a remedy by confirming rights already existing and, therefore, does not fall within the general prohibition against retrospective application of statutes. See 30 Fla.Jur., Statutes, § 152; City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); see also cases cited in 29 U.S.C. § 151, notes 24-26.
Accordingly, the order dismissing plaintiffs' complaint is reversed and the cause remanded with directions to reinstate the complaint subject to such further action and proceedings as may be consistent herewith.
CROSS, J., concurs.
WALDEN, C.J., dissents without opinion.

APPENDIX A
447.501 Unfair labor practices. 
(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
(b) Encouraging or discouraging membership in any employee organization *181 by discrimination in regard to hiring, tenure, or other conditions of employment.
(c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit.
(d) Discharging or discriminating against a public employee because he has filed charges or given testimony under this part.
(e) Dominating, interfering with, or assisting in the formation, existence, or administration of, any employee organization or contributing financial support to such an organization.
(f) Refusing to discuss grievances in good faith pursuant to the terms of the collective bargaining agreement with either the certified bargaining agent for the public employee or the employee involved.
(2) A public employee organization or anyone acting in its behalf or its officers, representatives, agents, or members are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part or interfering with, restraining, or coercing managerial employees by reason of their performance of job duties or other activities undertaken in the interests of the public employer.
(b) Causing or attempting to cause a public employer to discriminate against an employee because of the employee's membership or nonmembership in an employee organization or attempting to cause the public employer to violate any of the provisions of this part.
(c) Refusing to bargain collectively or failing to bargain collectively in good faith with a public employer.
(d) Discriminating against an employee because he has signed or filed an affidavit, petition, or complaint or given any information or testimony in any proceedings provided for in this part.
(e) Participating in a strike against the public employer by instigating or supporting, in any positive manner, a strike. Any violation of this paragraph shall subject the violator to the penalties provided in this part.
(f) Instigating or advocating support, in any positive manner, for an employee organization's activities from high school or grade school students or [students in] institutions of higher learning.
(3) Notwithstanding the provisions of subsections (1) and (2), the parties' rights of free speech shall not be infringed, and the expression of any arguments or opinions shall not constitute, or be evidence of an unfair employment practice or of any other violation of this part, if such expression contains no promise of benefits or threat of reprisal or force.
NOTES
[1] The Broward CTA, one of the plaintiffs below, is not directly involved in this appeal. See note 2, infra.
[2] Count V of the complaint which was maintained by the Broward CTA and the dismissal of which is not challenged in this appeal alleges the failure on the part of the defendant to collectively bargain with respect to the cancellation of the incentive awards program and with respect to other working conditions.
[3] See, for example, fn. 2, supra, referring to Count V of the complaint which alleges matters "`arguably" embraced within the jurisdiction of PERC.